# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAVID BELANGER,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**HEARINGLIFE TEXAS, LLC**, a Delaware registered limited liability company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## **CLASS ACTION COMPLAINT**

Plaintiff David Belanger ("Plaintiff" or "Belanger") brings this Class Action Complaint and Demand for Jury Trial against Defendant HearingLife Texas, LLC ("HearingLife") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC") and to consumers who have specifically asked the Defendant to stop calling them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff David Belanger is a resident of Springfield, Massachusetts.

2. Defendant HearingLife is a Delaware company headquartered in Somerset, New Jersey. Defendant HearingLife conducts business throughout this District and the U.S.

## JURISDICTION AND VENUE

3. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and the Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides in this District, and conduct giving rise to this case was directed by the Defendant from this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

9. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in September 2022 alone, at a rate of 139.9 million calls per day. www.robocallindex.com (last visited October 25, 2022).

10. The FCC also has received an increasing number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Defendant HearingLife is a hearing care company that provides hearing tests and sells hearing-related products such as hearing aids.[3]

14. Defendant HearingLife asks consumers to visit its retail locations to receive complimentary hearing examinations. These hearing examinations are conducted in order to determine if consumers could benefit from hearing aids, which Defendant then sells to the consumers.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/hearing-life/about/

> © 2022 HearingLife. All rights reserved.
>
> *The purpose of this hearing assessment and/or demonstration is for hearing wellness and to determine if the consumer may benefit from using hearing aids, which may include selling and fitting hearing aids. Products demonstrated may differ from products sold. Assessment conclusion is not a medical diagnosis and further testing may be required to diagnose hearing loss. The use of any hearing aid may not fully restore normal hearing and does not prevent future hearing loss. Hearing instruments may not meet the needs of all hearing-impaired individuals. Please note: Complimentary hearing assessment is not valid at these locations.[4]

15. Defendant HearingLife promotes hearing examinations through cold calling, including to phone numbers listed on the National Do Not Call list as in Plaintiff Belanger's case.

16. To make matters worse, Defendant HearingLife continues to call consumers even after they have explicitly told them to stop calling.

17. Defendant HearingLife is open about its cold call telemarketing, having posted a job online for a Cold Calling Sales Representative:

> **Cold Calling Sales Representative - Work from Home/REMOTE Virtual Hiring Event**
>
> POSTED ON 4/30/2022    CLOSED ON 5/18/2022
>
> Hearing Life    Centerville, NY    • Remote    Full Time
>
> Job Posting for **Cold Calling Sales Representative - Work from Home/REMOTE Virtual Hiring Event** at **Hearing Life**
>
> **Must Have Experience :**
> Cold Call - phone sales experience
> 200-300 Outbound cold calling dials per day
> Call center experience
> Must have experience performing telemarketing/cold calls
> Sign on Bonus offered
>
> Robust 2 week paid training program
> Position Requires you to RESIDE in the continental US[5]

---

[4] https://www.hearinglife.com/hearing-aids-centers/massachusetts/ma-chicopee
[5] https://www.salary.com/job/hearing-life/cold-calling-sales-representative-work-from-home-remote-virtual-hiring-event/j202204282034387238973

5

18. Many of Defendant HearingLife's employees have posted reviews online discussing Defendant's cold calling practices, including:

- **Management was horrible**
  Patient Care Coordinator (Former Employee) - San Antonio, TX - October 3, 2022

  Indeed Featured review
  The most useful review selected by Indeed

  Manager would talk about employees to other employees to start gossip and had a very senstovie scale of doing well and doing bad within the job positions. Just not a good position to be in <u>cold calling senior citizens who have no clue how we got their information</u> ? Not cool... [6]

- **Be careful**
  Patient Care Coordinator (Current Employee) - Great Falls, MT - August 11, 2022

  They will make you think its medical. When truly they want you to be a telemarkter and <u>cold call people to get them.</u> They are all number driven and only care about money. They promise raises a d never give them. The management is a joke and never respond to you.
  They are not a good montana company. Only like the people who buy the aid if you don't buy the aid then they are rude to them [7]

- **They have fun games to make more money**
  Call Center Representative (Current Employee) - Hemetca - January 6, 2022

  They're very helpful good place to work a company that's been around for a while stable a lot of employees been here for years so that shows you something theres room to move also

  ✓ Pros
  Working from home

  ✗ Cons
  <u>Calling 200 calls a day alot of dead time calling</u> [8]

---

[6] https://www.indeed.com/cmp/Hearinglife/reviews
[7] *Id.*
[8] *Id.*

6



19. Several consumers have posted complaints online about unsolicited calls that they received, with some going as far as saying that they have told HearingLife to stop calling and yet they continue to receive calls, including:

- "The phone calls from this company are harassment!! I received 4 phone calls within 5 minutes one day. I told them I was not interested in purchasing anything at that time and to please stop calling. Now today I got a call from yet another one of their locations. Informed them that my next call would be to report them as harassment. My next hearing aids will NOT come from this company."[11]

---

[9] https://www.glassdoor.com/Reviews/HearingLife-Reviews-E905623_P2.htm?filter.iso3Language=eng
[10] https://www.glassdoor.com/Reviews/HearingLife-Reviews-E905623_P3.htm?filter.iso3Language=eng
[11] https://www.bbb.org/us/nj/somerset/profile/hearing-assistive-devices/hearinglife-0221-90111122/customer-reviews

- "I bought a a set of hearing aids from this company a few years ago and now they call me all the time trying to sell me more hearing aids. I have asked them to place me on the do not call list and yet they still insist on calling me, sometimes multiple times a week. They are harassing me at work, and at home."[12]

- "It's 'Hearing Life' they do hearing tests and sell heating aids. I've asked them to stop calling and blocked their number but they just use a different number to call on"[13]

- "called wanting to setup an appointment to have our ears tested, trying to sell HIGH dollar hearing aids."[14]

## PLAINTIFF BELANGER'S ALLEGATIONS

20. Plaintiff Belanger's cellular phone number ending in 7519 has been registered on the DNC since October 24, 2014.

21. Plaintiff Belanger uses his cellular phone number for personal and residential purposes only.

22. At the beginning of 2022, Plaintiff started receiving unsolicited telemarketing calls from Defendant HearingLife. The purpose of the calls was to schedule a "complimentary" hearing exam.

23. Plaintiff answered several of the calls and also called back Defendant HearingLife to specifically ask HearingLife to remove his cell phone number from their call list.

24. Despite his numerous requests for the calls to stop, Defendant HearingLife continued to call the Plaintiff's cell phone number.

---

[12] *Id.*
[13] https://800notes.com/Phone.aspx/1-216-424-3011
[14] https://800notes.com/Phone.aspx/1-430-502-6255

25. Plaintiff blocked Defendant HearingLife's phone number, but Defendant continues to leave voicemails with most of its unsolicited calls.

26. For example, on August 31, 2022, Plaintiff received an unsolicited call from Defandant HearingLife to his cell phone, from 413-536-6700. This call was not answered, but a voicemail was left stating:

> "Yes, hello, this message is for David. This is Marlo calling with a courtesy call from HearingLife regarding your upcoming appointment. If you could please call us at 413-536-6700. Thank you and have a great day."

27. On September 7, 2022, Plaintiff received another unsolicited call from Defendant HearingLife to his cell phone, from 413-536-6700. This call was not answered, but a voicemail was left stating:

> "Yes, hello, this message is for David. David, this is Marlo calling with a courtesy call from HearingLife regarding your upcoming appointment. If you could please call us back at 413-536-6700. Thank you and have a great day."

28. On October 27, 2022, Plaintiff received another unsolicited call from Defandant HearingLife to his cell phone, from 413-536-6700. This call was not answered, but a voicemail was left stating:

> "Yes, good morning, this message is for David. David, this is Marlo calling with a courtesy call from HearingLife to schedule you for your complimentary annual hearing exam. If you can please return our call at 413-536-6700. Thank you so much and have a great day."

29. Plaintiff also received the following calls from Defendant which he did not answer, most of which resulted in a voicemail being left, including:

- June 9, 2022 from 413-536-6700;

- August 26, 2022 from 413-536-6700;

- September 2, 6, 8, 12, 15 and 19, 2022 all from 413-536-6700

- October 17, and 21, 2022, from 413-536-6700

- November 9, 2022 at 10:18 AM from 413-536-6700

30. The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Belanger in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

31. Seeking redress for these injuries, Plaintiff Belanger, on behalf of himself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited telemarketing calls to phone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

32. Plaintiff Belanger brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time on their residential telephone number, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time on their residential telephone number, (2) within any 12-month period, (3) for substantially the same reason that Defendant called Plaintiff, (4) including at least once after the person requested that Defendant or its agent to stop calling.

33. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

34. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class.

Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    whether Defendant placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

    (b)    whether Defendant or their agents placed multiple calls to Plaintiff and members of the Internal Do Not Call Class without implementing adequate procedures for honoring do not call requests;

    (c)    whether the calls violated the TCPA;

    (d)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

36. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

37. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable

to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Belanger and the Do Not Call Registry Class)**

38. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

39. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on

the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

40. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

41. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

42. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

43. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Belanger and the Internal Do Not Call Class)**

44. Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference herein.

45. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf

15

such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

46. Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by

16

the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

47. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

48. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Belanger individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Belanger requests a jury trial.

DATED this 12th day of March, 2023.

        **DAVID BELANGER**, individually and on behalf of all others similarly situated,

        */s/ Stefan Coleman*
        Stefan Coleman
        law@stefancoleman.com
        1072 Madison Avenue, Suite 1
        Lakewood, NJ 08701
        Telephone: (877) 333-9427
        Facsimile: (888) 498-8946

        Avi R. Kaufman*
        KAUFMAN P.A.
        237 South Dixie Highway, Floor 4
        Coral Gables, FL 33133
        Telephone: (305) 469-5881
        kaufman@kaufmanpa.com

        *Attorneys for Plaintiff and the Class*

        *\*Pro Hac Vice Admission to be Sought*